

BRYAN C. SHARTLE
Direct: (504) 846-7917
bshartle@sessions-law.biz

July 17, 2014

VIA ECF

United States Court of Appeals for the Second Circuit
40 Centre Street
New York, N.Y. 10007

      **Re: *Albert A. Nigro v. Mercantile Adjustment Bureau, LLC*, No. 13-1362**

Dear Clerk of Court:

      Appellee, Mercantile Adjustment Bureau, LLC ("MAB"), submits this response to the June 30, 2014 letter filed by the Federal Communications Commission ("FCC") and asks the Court to consider the following:

1.    On May 19, 2014, the Second Circuit issued a letter to the FCC, requesting the FCC submit its opinion on the following question:

> Does a person, who is not a "consumer" and is not responsible for the debt, consent to autodialed debt collection calls within the meaning of 23 F.C.R. 559 when he agrees to be called in connection with the termination of a deceased debtor's account, and the consent did not occur "during the transaction that resulted in the debt owed?"

2.    On June 30, 2014, the FCC filed its letter, answering the question in the negative. In answering the question, the FCC appears to have applied a subjective analysis of only those facts presented by plaintiff. However, the test posited by the FCC in its 2008 Declaratory Ruling requires an objective analysis, *i.e.*, given the circumstances, would a reasonable person have expected calls regarding the debt and, thus, consented to be contacted at the number the person provided regarding the debt.

3.    In its 2008 Declaratory Ruling, the FCC concluded "the provision of a cell number to a creditor . . . ***reasonably evidences*** prior express consent by the cell

Lakeway Two   Suite 200   3850 North Causeway Boulevard   Metairie, Louisiana   70002-7227
(504) 828-3700   (504) 828-3737 F   www.sessions-law.com

CALIFORNIA • COLORADO • FLORIDA • GEORGIA • ILLINOIS • LOUISIANA • NEW JERSEY • NEW YORK • OHIO • TEXAS

**SESSIONS FISHMAN NATHAN & ISRAEL LLC**
ATTORNEYS AT LAW

United States Court of Appeals for the Second Circuit
July 17, 2014 – Page 2

phone subscriber to be contacted at that number regarding the debt." *In Re. TCPA*, 23 F.C.C. Rcd. 559, 563 (¶ 9) (2008) (the "2008 FCC Order") (emphasis added). "Persons who knowingly release their phone numbers have ***in effect*** given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In Re. TCPA*, 7 F.C.C. Rcd. 8752, 8769 (¶ 31) (1992) (emphasis added). Thus, "while the scope of consent must be determined upon the facts of each situation," it must be done with an objective analysis to determine whether the provision of the cell phone number "reasonably evidences prior express consent." *In Re. TCPA*, 29 F.C.C. Rcd. 3442 (¶ 11) (2014). To hold otherwise would require a creditor or debt collector to guess what the person providing his cell number believes. "[Yet] Congress did not expect the TCPA to be a barrier to normal, expected, and desired business communications." *Id.* at ¶ 8.

4. In the instant case, a reasonable person who calls a utility company to cancel service for a deceased relative and volunteers his cell phone number in relation to the account would expect future calls regarding the wind-down of the account, including whether there remained a surplus or unpaid balance. Indeed, once service is terminated, there is no other purpose for future calls. This Court should affirm the District Court's decision.

5. **The Court Should Affirm the District Court's Decision** – On March 12, 2013, Judge Skretny granted MAB's summary judgment motion. [A-232-240]. He found it was undisputed that appellant contacted National Grid to discontinue electrical service for the residence of his recently deceased mother-in-law. [A-233]. Appellant voluntarily provided his cellular telephone number to National Grid. *Id*. Appellant admitted he did not impose any conditions or limitations on the cellular telephone number when he provided it to National Grid. [A-43].

6. Appellant stated he *believed* National Grid placed a condition on use of his cellular telephone number, limiting its use to "effectuate disconnection of electrical service." [A-233]. Judge Skretny, however, found appellant's deposition testimony undermined his self-serving statement, "[p]laintiff testified that he expected possible further contact from the company, as he was unsure if [the deceased debtor] had an outstanding balance or surplus on her account[.]" [A-238-239]. Judge Skretny added, "[p]laintiff gave his number in connection with the account's termination, and, by his own admission, he was aware at that time of the

possibility that there might be a surplus or debt on [the deceased debtor's] account that would need to be addressed as part of the termination process." [A-239-240].

7. Contrary to the FCC's conclusion, Judge Skretny did **_not_** find appellant provided express consent _simply because_ he provided his cell phone number to National Grid, and no more. Instead, the District Court found appellant provided express consent based upon an objective review of the circumstances and undisputed evidence and testimony – appellant reached out to and contacted National Grid about the account of a deceased relative, he provided his cellular telephone number as a replacement contact number on the account, he did not place any limitations or restrictions on the number, and he understood there may be future communications regarding the post-termination wind-down of the account, _i.e._, whether there was a surplus or debt. Put another way, a reasonable person in the same circumstances would expect subsequent calls regarding the debt and, accordingly, consents to such calls under said circumstances.

8. Additionally, the FCC confusingly appears to focus on the timing of when appellant furnished his cell phone number, rather than the objective context in which he furnished the number. Again, this Court should ask whether a reasonable person, given the same circumstances, would have expected calls about the debt, and thus provided consent. The timing of when a cellular telephone number is furnished may factor into the consent issue, but it is not dispositive—even the FCC acknowledges this conclusion in its letter. _See_ FCC Letter, at p. 11; _see also Moore v. Firstsource Advantage, LLC_, 2011 WL 4345703, *10 (W.D. N.Y. Sept. 15, 2011) ("[G]iven that the FCC emphasized that the relevant issue in evaluating 'prior express consent' is whether a phone number has voluntarily been provided to the creditor, it would strain logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute 'prior express consent' to be called at that number, but that the equally voluntary provision of a contact number sometime after the account is opened would not.").

9. In summary, applying an objective standard to the undisputed facts establishes appellant consented to the related calls. First, appellant proactively called the utility company to disconnect service. [A-34-37]. Second, he volunteered his cellular number to National Grid. _Id_. Third, appellant did not place any limitations or restrictions on the number. _Id_. And fourth, appellant

**SESSIONS FISHMAN NATHAN & ISRAEL** LLC
ATTORNEYS AT LAW

United States Court of Appeals for the Second Circuit
July 17, 2014 – Page 4

understood that he may receive future communications from National Grid if there was an outstanding balance owed. *Id*.

10. Finally, affirming the District Court's decision will ***not*** lead to absurd results. At oral argument, a hypothetical was raised wherein a neighbor housesitting for the debtor answers the debtor's phone and provides his cell phone number. The question was posed: has the neighbor now consented to calls to his cell phone? The answer is "no" because, given the circumstances, the neighbor has not reasonably evidenced consent. The neighbor answered the phone and did not reach out to the company, like appellant did here. And, more importantly, the debtor is still alive and there is no reason to call the neighbor's number. In the instant case, however, National Grid received a call from appellant who advised his mother-in-law had just passed away and he needed to terminate her service. The company would naturally want a new point of contact for winding down the account, and here the appellant volunteered himself and provided his phone number. And, critically, as appellant acknowledged and the District Court properly noted, appellant understood he would receive future calls regarding the subject account ("Plaintiff testified that he expected possible further contact from the company, as he was unsure if [the deceased debtor] had an outstanding balance or surplus on her account[.]") [A-238-239].

11. The undisputed facts establish appellant consented to receive the subject calls. This Court should affirm the District Court's decision.

               */s/ Bryan C. Shartle, Esq.*
               David Israel, Esq.
               Bryan C. Shartle, Esq.
               Justin H. Homes, Esq.
               SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C
               3850 N. Causeway Blvd., Suite 200
               Metairie, LA 70002
               Tel: 504-828-3700
               Fax: 504-828-3737
               Attorneys for Appellee,
               Mercantile Adjustment Bureau, LLC

**SESSIONS FISHMAN NATHAN & ISRAEL**LLC
ATTORNEYS AT LAW

United States Court of Appeals for the Second Circuit
July 17, 2014 – Page 5

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| ALBERT A. NIGRO,<br>　　　　　Plaintiff-Appellant,<br>v.<br>MERCANTILE ADJUSTMENT<br>BUREAU, LLC,<br>　　　　　Defendant-Appellee. | Civil Action No.: 13-1362 |

**CERTIFICATE OF SERVICE**

　　I hereby certify that on this 17th day of July 2014, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

　　　　　　　　　　　　　　　By: /s/ *Bryan C. Shartle*　　　　　　
　　　　　　　　　　　　　　　　　Bryan C. Sharlte, Esq.
　　　　　　　　　　　　　　　　　Attorneys for Appellee,
　　　　　　　　　　　　　　　　　Mercantile Adjustment Bureau, LLC