13-1362
Nigro v. Mercantile Adjustment Bureau

## UNITED STATES COURT OF APPEALS

### FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: February 19, 2014          Decided: October 16, 2014)

Docket No. 13-1362
_____

ALBERT A. NIGRO,

*Plaintiff-Appellant*,

v.

MERCANTILE ADJUSTMENT BUREAU, LLC,

*Defendant-Appellee.*

_____

Before: KEARSE, WINTER, AND WESLEY, *Circuit Judges*.

  Plaintiff-Appellant Albert Nigro ("Nigro") seeks reversal of a March 13, 2013 judgment of the United States District Court for the Western District of New York (Skretny, C.J.) granting Defendant-Appellee Mercantile Adjustment Bureau's ("MAB") motion for summary judgment. Nigro asserts that, while attempting to collect his deceased mother-in-law's unpaid electric bill, MAB sent numerous automated telephone calls to his mobile phone in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA"). The district court held that Nigro consented to the calls when he contacted the electric company to discontinue his mother-in-law's service after her death. We REVERSE and REMAND. Under the FCC's interpretation of the statute, Nigro

1

did not consent because his number was not "provided during the transaction that resulted in the debt owed." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559 ¶ 10 (2008).

REVERSED AND REMANDED.

————————

KENNETH R. HILLER, Amherst, NY, *for Plaintiff-Appellant*.

BRYAN C. SHARTLE (David Israel, Justin H. Holmes, Michael Del Valle, *on the brief*), Sessions, Fishman, Nathan & Israel, Amherst, NY, *for Defendant-Appellee*.

Jonathan B. Sallet, General Counsel, Federal Communications Commission, Washington, DC, *for Amicus Curiae Federal Communications Commission*.

————————

PER CURIAM:

Plaintiff-Appellant Albert Nigro ("Nigro") seeks reversal of a March 13, 2013 judgment of the United States District Court for the Western District of New York (Skretny, C.J.) granting Defendant-Appellee Mercantile Adjustment Bureau's ("MAB") motion for summary judgment. Nigro asserts that, while attempting to collect his deceased mother-in-law's unpaid electric bill, MAB sent numerous automated telephone calls to his mobile phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 of 1991, *et seq.* ("TCPA"). The district court held that Nigro consented to the calls when he contacted the

2

electric company to discontinue service after her death.  We REVERSE and REMAND.  Under the FCC's interpretation of the statute, Nigro did not consent because his number was not "provided during the transaction that resulted in the debt owed." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559 ¶ 10 (2008).

## BACKGROUND

In September 2008, Joan Thomas, Nigro's mother-in-law, died.  After her death, Nigro called National Grid, Thomas's power company, to discontinue service at her apartment.  During the call, National Grid asked Nigro to provide his phone number; he complied by providing the number to his mobile phone.  The company told Nigro that a phone number was necessary to disconnect service.  At the time of the shut off, however, unbeknownst to Nigro, there was a balance of $68 on Thomas's account.  When the amount went unpaid, National Grid hired Defendant Mercantile Adjustment Bureau to collect the debt.  Nigro never received any bill for Thomas's account.  His only communications from MAB consisted of seventy-two automated telephone calls over the course of nine months between April 2010 and January 2011.

3

In December 2010, Nigro filed the instant action, asserting, among other things, claims under the TCPA, which creates a private cause of action against the senders of certain categories of automated telephone calls. In March 2013, the district court granted summary judgment to MAB on all of Nigro's claims. With respect to Nigro's TCPA claims, the court held that MAB was not liable because Nigro consented to the calls when he provided his number to National Grid. Nigro timely appealed, but pursues only his TCPA claims.

## DISCUSSION

The TCPA makes it "unlawful for any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). There are two exceptions to this categorical bar. The statute permits calls (i) "made for emergency purposes" or (ii) "made with the prior express consent of the called party." *Id*. Because there is no dispute as to the circumstances of Nigro's call to National Grid or as to what was said during that call, the narrow question before us is whether MAB's calls were made with

4

Nigro's "prior express consent" within the meaning of the statute. *Id*.[1] Recognizing that Congress has delegated rulemaking authority over the TCPA to the Federal Communications Commission ("FCC"), *id*. § 227(b)(2)(C), both parties rely principally on FCC rulings to support their respective positions.[2]

MAB argues that Nigro voluntarily gave his number to National Grid in connection with Thomas's account and did not expressly limit the purposes for which his number could be used. Thus, MAB concludes, he consented to the automated calls. There is some support for this view in FCC rulings.[3] For example, the FCC has ruled that where there is an "established business relationship" – a term the FCC defines broadly as "a prior or existing

---

[1] We review the district court's grant of summary judgment *de novo*. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

[2] Since neither party actually challenges the FCC's interpretation of the TCPA, we need not decide the extent to which the Administrative Orders Review Act, also known as the "Hobbs Act," limits our jurisdiction to review that interpretation, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a); *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 447–48 (7th Cir. 2010); *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000).

[3] In light of the parties' understandable reliance on FCC rulings, following oral argument, we sought the views of the FCC as *amicus curiae*. We often – but do not always – give "*Auer* deference" to agency interpretations of their own regulations in *amicus* briefs. *Union Carbide Corp. & Subsidiaries v. C.I.R.*, 697 F.3d 104, 109 (2d Cir. 2012). In their submissions responding to the FCC's brief, however, neither party asks us to give this deference to the agency. Plaintiff merely asks us to apply the weaker "*Skidmore* deference." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). This deference we grant, without deciding whether *Auer* should apply.

relationship formed by voluntary two-way communication" – a business need not obtain specific consent to make automated telephone calls to a consumer. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd. 8752 ¶ 34–35 (1992). The "business relationship" is sufficient consent because it supplies an inference of implied consent.

Initially, the FCC provided no special treatment for debt collection calls. The Commission held that these calls were adequately covered by the "established business relationship" rule. *Id*. ¶ 39. More recently, however, the FCC has provided specific limits on automated calls by debt collectors. In response to a request by a debt collectors' trade association for a declaratory ruling, the FCC "emphasize[d] that prior express consent [for automated debt collection calls] is . . . granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559 ¶ 10 (2008).

Under this ruling, Nigro plainly did not consent. He did not provide his phone number "during the transaction that resulted in the debt owed." *Id*. Indeed, he provided his number long after the debt was incurred and was not in any way responsible for – or even fully aware of – the debt. For the same reason, he was not a "consumer"; he was a third party. MAB's messages themselves appear to reflect its own recognition that the debt was Thomas's alone. The pre-recorded calls specifically instructed the recipient to "disconnect this call" if he was not "Joan Thomas." The FCC's *amicus* brief, *see* note 3, *supra*, agrees with this view. Since Nigro did not consent to the calls, they were prohibited by the TCPA, and the district court erred in granting summary judgment to MAB.[4]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings.

---

[4] We do not decide what the outcome would be if a consumer were to open an account with a creditor and initially provide only his home phone number, but later in the course of the relationship provide a wireless number. Whether a subsequently given phone number is given as part of a continuing "transaction," or a transaction separate from the initial one that "resulted in the debt owed," is a question for future courts. Here, Nigro sought to close the account, not service it. In no sense was he incurring a debt.
  Since Nigro was not an official representative of Thomas's estate, we also need not decide whether the outcome of this case would change if he had been.